UNITED STATES v. CABRERA BROS. (NO. 2453)[1]

1. APPRAISEMENT—EVIDENCE—ADMISSIBILITY—SPECIAL AGENTS' REPORTS.

Section 501, Tariff Act of 1922, provides that special agents' reports "may be considered" by the single general appraiser on appeal from the appraisement of the local appraiser. Manifestly the statute does not contemplate such reports as evidence unless they are relevant. Where exception was taken to the exclusion of such report and error assigned in this court against the Board of General Appraisers for not reversing the single general appraiser for such exclusion, the excluded report not being made a part of the record in this court, this court is unable to judge of its relevancy, and, hence, the propriety of its exclusion.

2. APPRAISEMENT—WRITTEN FINDINGS BY BOARD UNDER SECTION 501, TARIFF ACT OF 1922.

Section 402, Tariff Act of 1922, provides that duty shall be assessed upon the foreign value or the export value, whichever is higher; that, if neither can be ascertained to the satisfaction of the appraising officer, the assessment shall be upon the United States value; and, if that can not be ascertained, then upon the cost of production. The written findings required of the Board of United States General Appraisers in appraisement appeals by section 501, Tariff Act of 1922, must show which of these methods was adopted and the items which were ascertained and considered in finding the value. The cause is reversed and remanded for such written findings to be made.

United States Court of Customs Appeals, May 11, 1925

APPEAL from Board of United States General Appraisers, Reappraisement Circular 34932

[Reversed and remanded.]

*William W. Hoppin*, Assistant Attorney General (*John G. Lerch*, special attorney, of counsel), for the United States.

No appearance for appellees.

[Oral argument January 14, 1925, by Mr. Lerch]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

This is an appeal from reappraisement involving guava paste and preserved fruits imported from Cuba.

There is no appearance for, or brief or argument in behalf of, the appellee.

The importation was appraised by the local appraiser. The collector appealed to reappraisement. The single general appraiser sustained the appraisement of the local appraiser. The collector applied for a review of this decision by a board of three general appraisers. That board affirmed the decision of the single general appraiser. The Government appeals to this court.

---

[1] T. D. 40936.

The applicable statute, section 501 of the Tariff Act of 1922, among other things, provides, in cases where an appeal is taken from the appraisal of a local appraiser, that the single general appraiser—

shall give reasonable notice to the importer and to the person designated to represent the Government in such proceedings of the time and place of hearing, at which the parties and their attorneys shall have an opportunity to introduce evidence and to hear and cross-examine the witnesses of the other party and to inspect all samples and other papers admitted or offered as evidence. In finding such value, affidavits of persons whose attendance can not reasonably be had, price lists, catalogues, reports or depositions of consuls, special agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be considered. Copies of official documents, when certified by an official duly authorized by the Secretary of the Treasury, may be admitted in evidence with the same force and effect as original documents.

The section further provides, in event the collector applies for a review of the decision of the single general appraiser, that a board of three general appraisers—

shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser and * * * shall affirm, reverse, or modify the decision of the general appraiser or remand the case to the general appraiser for further proceedings, and shall state its action in a written decision to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor.

The hearing of the appeal before the single general appraiser was begun at Key West, Fla., and, at the request of the Government, was continued to and finished at Tampa. The importers appeared at the hearing in Key West, but not at Tampa, and were not represented by counsel at either place.

At Key West evidence was received on behalf of the importers, and the attorney for the Government produced and caused to be marked for identification as Exhibit A a report of a so-called special agent as bearing upon the question of the market value of the importation, certified by one Gorman, as will hereinafter appear.

At the Tampa hearing a witness, Sanchez, called by the Government, testified in substance that he was an examiner of merchandise at Tampa; that he had signed Exhibit A; that one Gorman, who was, the witness said, "a special agent at the port of Tampa," had also signed it; that he and Gorman participated in the making thereof; that they had acquired information upon which the report was based in Cuba in November, 1923. Said Exhibit A was thereupon offered in evidence and excluded by the general appraiser on the ground that the witness was physically present and could and would be permitted to testify to the subject matter thereof, to which ruling the Government excepted, claiming that the offered exhibit was competent evidence under the statute.

Thereafter Sanchez gave further testimony as to investigations of himself and Gorman in Cuba. Whether or not his testimony dis-

closed in substance or detail the information contained in Exhibit A does not appear, but therefrom it does clearly appear that such investigations were made several months after the merchandise in these cases was imported.

Thereupon the Government called one Watson, who testified that he was assistant collector of customs at the port of Tampa; and that he asked the Secretary of State in Cuba for a copy of the new Cuban sales tax act, and from him in response to that request obtained a paper dated Habana, November 23, 1922, called the Official Gazette, which the witness said he had had translated. Thereupon, at the request of the Government, this paper was marked Exhibit B for identification, the witness stating that it was a copy of an executive order issued by the President of Cuba, putting the act into force and effect.

Exhibit B was not offered in evidence and the witness was then withdrawn from the stand.

Thereupon the Government called Mr. Curry, who testified that he was deputy collector in charge of customs at Pensacola, Fla. He was shown Exhibit B and asked if it was submitted to him for the purpose of making a translation, to which he replied in the affirmative. He said that it was the Official Gazette of the Republic of Cuba and that he had made a translation thereof.

A copy of such translation was then, at the request of the Government, marked "Exhibit C" for identification, but was not offered in evidence.

Other testimony was given by another witness called by the Government, who had imported guava products from Cuba, relative to the allowance of a discount or commission on merchandise similar to that involved in this case, which the witness purchased in Cuba.

The Government then called Mr. Gorman, referred to in the testimony of Sanchez, who testified that he was a customs agent in charge of the sixth district of Florida. He was shown Exhibit A and testified that it was signed by him; that he was familiar with its contents; and that it was certified by him on the front page. The Government then offered Exhibit A in evidence. It was excluded by the general appraiser on the ground that the witness was physically present and competent to testify, to which Government counsel excepted.

The single general appraiser on the evidence before him sustained the entered value and found that to be the dutiable value of the merchandise. He did not state whether it was the foreign value, export value, or what value it was.

The Government, in appealing to reappraisement by the board of three, alleged error in that:

(1) The general appraiser had not advanced the entered and appraised value by the amount of a 10 per centum discount and a 1 per centum Cuban sales tax.

(2) In not admitting in evidence the special agent's report.

(3) In sustaining the entered value which is the export value.

(4) In not finding the home market value, which is clearly shown by the record to be the invoice value without the 10 per centum discount plus the 1 per centum sales tax.

As stated, the board of three affirmed the decision of the single general appraiser, but it made no finding as to whether the value fixed by the general appraiser or by the board was export value or foreign value.

In its assignment of errors here the Government alleges, among other things, that the board of three erred:

2. In sustaining the value found by the single general appraiser.

3. In not reversing the findings of the general appraiser.

4. In not reversing the action of the general appraiser and remanding the case to him for a new trial.

5. In not reversing the rulings upon evidence made by the single general appraiser.

7. In not making a finding of fact as required by law.

The argument of the Government in this court reduces to three contentions:

(1) That under said section 501 it was the duty of the single general appraiser to receive in evidence Exhibit A.

(2) That there was error in excluding the report of Collector Watson.

(3) That the Board of General Appraisers has made no findings of fact in accordance with the statute.

As to the first, it may be said that the Government has, apparently, studiously refrained from making that exhibit a part of the record in this case, so that we are without authority to examine it. The quoted statute provides that such reports "may be considered." The Government urges that this provision is mandatory upon the single general appraiser and, therefore, that he committed reversible error in refusing to receive the exhibit in evidence; for which reason the board should have reversed his judgment and remanded the case to him for further proceedings.

It is at once evident that we can not pass upon the admissibility of the offered exhibit without an opportunity to examine the same, in order to determine whether or not its contents are material and relevant to any issue involved, because, manifestly, the statute does not contemplate that such reports are admissible unless they are relevant to the issue.

The fact that the investigations in Cuba, upon which Exhibit A was based, were made several months after the entries here, emphasizes the importance of having the report before us before we pass upon the question of its admissibility.

The second contention may be disposed of by saying that the record does not show that Collector Watson's report was offered in evidence.

The issue raised by the Government's last contention is more difficult of determination. It is urged in support thereof that it is impossible to tell whether the board found the export value or the foreign value under the provisions of section 402 of the act of 1922.

That section provides that the foreign value or the export value, whichever is higher, shall be the value upon which duty shall be assessed; that if neither can be ascertained to the satisfaction of the appraising officer, the assessment shall be upon the United States value; and if that can not be ascertained, then upon the cost of production.

In view of the provisions of this section and of section 501, before referred to, we think it is incumbent upon the board of three general appraisers to find and state in their written decision which of the methods of appraisement provided for in section 402 is adopted by them in appraising imported merchandise, and also to find and state the items which are ascertained and considered in determining the appraisement thereof.

We are at a loss to know how this court, upon appeal to it in appraisement proceedings, can determine the legal questions involved unless such facts are definitely found by that board. Nor can we see how the rights of the Government, the importer, the American manufacturer, wholesaler, or producer can be safeguarded and determined unless the record of the appraisement proceedings of the board of three coming before this court definitely states such facts.

Certainly it is not contemplated by the statute that we shall wade through a record to ascertain or to guess which of the statutory methods of appraisement was adopted, or what items were involved therein.

Section 502 (c) of the Tariff Act of 1922 provides that it shall be the duty of all officers of the customs to execute and carry into effect the instructions of the Secretary of the Treasury relative to the execution of the revenue laws.

The Customs Regulations of 1923 contain such instructions. Article 694 thereof is, in substance, a repetition of the statutory provisions on the subject of appraisement. Article 700 contains numerous regulations of the Secretary of the Treasury designed and apparently well calculated to carry into effect the purposes of the statute in appraisements made by the local appraiser. It is unnecessary to analyze the same. An examination thereof in connection

with article 694 will disclose that such appraiser in effect is charged with the duty, when he returns his appraisement, of reporting which of the statutory methods of appraisement he has adopted and also the several items ascertained and considered by him which constitute his appraised value.

The statute is silent as to just what shall be contained in a decision rendered by a general appraiser in appraisement matters, but we are satisfied that a return similar to that required of the local appraiser would promote a clear understanding of the issues involved and facilitate the disposition of appeals from the single general appraiser to the appraisement board.

In the case at bar, as already appears, the appraisement board has not stated, nor are, we able with certainty to ascertain from the record, whether the foreign or export value is the basis of the appraisement. Nor does it contain a definite statement of the items which enter into and form the basis of the appraisement.

The judgment is, therefore, *reversed* and the case *remanded* for further proceedings pursuant to law.